**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| AGROS SHIPPING CO. LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 19-CV-_____ |
| | § | |
| | § | **IN ADMIRALTY** |
| | § | |
| CEYLON PETROLEUM CORPORATION | § | **VERIFIED COMPLAINT** |
| | § | |
| Defendant. | § | |

Plaintiff, AGROS SHIPPING CO. LTD. (hereinafter "AGROS"), by and through its attorneys, Chalos & Co, P.C., files this Verified Complaint against Defendant CEYLON PETROLEUM CORPORATION, (hereinafter "CPC") and alleges:

## JURISDICTION AND VENUE

1.       Subject matter jurisdiction of this Court is based upon admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333, and is brought under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. This case involves a breach of a maritime contract and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.       Venue is proper in this District Court pursuant to 28 U.S.C. §1391(b) because property belonging to the Defendant is located within the District.

## THE PARTIES

3.       At all times material hereto, AGROS was and still is a foreign company organized under the laws of Liberia.

4.      At all times material hereto, CPC was and still is a company organized under the laws of Sri Lanka and maintains its principal address at 609 Dr Danister de Silva Mawatha, Colombo 000900, Sri Lanka.

## THE FACTS

### Breach of Charter Party Agreement

5.      AGROS was the owner of the M/T AGROS (hereinafter "the Vessel") (IMO 9110482).

6.      On or about July 3, 2014, AGROS chartered the Vessel to CPC ("Charterer") pursuant to a charterparty agreement ("the Charter party") on an amended Shelltime 4 form for a period of six (6) months with an option to extend.  The hire rate under the Charterparty was USD 17,500 per day.  A copy of the Charterparty is attached hereto as **Exhibit 1**.

7.      The Charterparty is a maritime contract.

8.      The parties further agreed to the arbitration of disputes arising out of the maritime contract in London with English law to apply pursuant to Clause 41.  *Id*., at Clause 41.

9.      Clause 8 of the Charterparty provided that hire was due per calendar month in advance.  *Id*. at Clause 8.  In default of proper and timely payment, AGROS had the right to notify CPC of the default, collect interest, and ultimately withdraw the Vessel from the service of CPC without prejudice to its other rights under the Charterparty in the event the outstanding balance was not promptly rectified.  *Id*.

10.      Clause 13 provided that "The master shall be under the orders and direction of Charterers as regards employment of the vessel . . .  Charterers hereby indemnify Owners against all consequences or liabilities that may arise . . . ."

11.     Clause 15 provided that "Charterers shall accept and pay for all bunkers on board at the time of delivery, and Owners shall on redelivery (whether it occurs at the end of the charter period or on earlier termination of this charter) accept and pay for all bunkers remaining on board . . . ." *Id.*, at Clause 15.  It was an implied term of the Charterparty that Charterers would not arrest the Vessel wrongfully.

12.     Pursuant to the terms of the Charterparty, the Vessel was delivered into CPC's service on July 3, 2014 at 1900 hours local time.  At the time of the delivery, 259 MT of fuel oil and 25.60 MT of gasoil were on board the Vessel.

13.     The first hire instalment for the period of July 3, 2014 – August 3, 2014 was paid.

14.     AGROS submitted an invoice to CPC for the second hire installment for USD 522,126.25 and for the third hire installment for USD 505,312.50.  The invoices for the second and third hire installments dated July 31, 2014 and August 28, 2014 are attached hereto as **Exhibit 2**.

15.     CPC failed to remit payment to AGROS for the second and third hire installments.

16.     In addition, AGROS submitted an invoice to CPC for bunker fuel, which was on board the Vessel at the time of delivery to CPC, in the amount of USD 181,538.30.  The invoice for the bunker fuel dated July 4, 2014 is attached hereto as **Exhibit 3**.

17.     CPC failed to remit payment to AGROS for the bunker fuel.

18.     Despite being duly and properly invoiced, CPC failed, neglected and/or refused to pay the two (2) outstanding invoices for charter hire and bunker fuel, which are indisputably due and owing, for the total aggregated amount of USD 1,208,977.05 and AGROS subsequently on September 19, 2014, AGROS accepted CPC's conduct as repudiatory and lawfully terminated the Charterparty.

19.     AGROS is also entitled to damages for loss of charter hire at the rate of $17,500 per day for a period of 106 days, 3 hours and 36 minutes, amounting to USD 1,857,625, representing the period from which the Charterparty was terminated to the earliest time at which the charterer was contractually entitled to redeliver the Vessel.

| | |
|---|---|
| Unpaid Hire: | $ 1,208,977.05 |
|     Estimated interest: | $ 272,019.84 |
| Bunkers on Board at Delivery: | $ 181,538.30 |
|     Estimated interest: | $ 43,382.11 |
| Loss of Hire (from 9.19.14 to 1.3.15): | $ 1,857,625.00 |
|     Estimated interest: | $ 407,879.36 |
| **Total Damages from Breach of Charter Party:** | **$ 3,971,421.66** |

## Wrongful Arrest of the Vessel

20.     Initially, CPC chartered the Vessel for use in ship-to-ship (STS) transfers of crude products.

21.     CPC purportedly contracted with Luna Shipping & Enterprises Ltd. ("Luna") and sought to assign its rights and remedies under the Charterparty to Luna.  This assignment was part of an overarching agreement, pursuant to which Luna agreed, *inter alia*, to indemnify CPC against any claims AGROS might bring against CPC, and to pay over to CPC any sums that Luna might recover from AGROS.

22.     On September 15, 2014, Luna commenced legal proceedings against the Vessel in the High Court of Sri Lanka and sought to arrest the Vessel.

23.     Luna alleged that AGROS made negligent and/or fraudulent misrepresentations in relation to the Vessel's CAP rating and SIRE inspection status and claimed damages of approximately USD 18,000,000.

24.     AGROS alleged that the arrest was wrongful because Luna brought these claims in the knowledge that they were without merit, and/or inflated, and/or were made without adequate

4

grounds for arresting the Vessel and/or seeking security for USD 18,000,000. AGROS further alleged that the arrest of the Vessel was made by Luna to discourage AGROS from pursuing its on claims for unpaid hire and bunker fuel.

25.     On January 26, 2015 a Sri Lankan court issued an order to release the Vessel in exchange for a USD 1,000,000 security bond. Notwithstanding, Luna sought several appeals of the security order (all of which failed) and disputed the wording of the guarantee, but ultimately delayed the Vessel and kept it under arrest until March 11, 2015.

26.     At the time of the wrongful arrest, neither Luna nor CPC had a valid claim based on law, equity, or admiralty upon which to justify the arrest of the Vessel.

27.     Luna/CPC's wrongful arrest of the Vessel has caused AGROS to sustain significant loss and damages, including but without limitation to, loss of hire, legal fees, loss of employment and other related expenses evidenced as follows:

| | |
|---|---|
| Expenses Resulting from Unlawful Arrest: | $ 139,834.00 |
| Loss of Hire (from 1.3.15 to 3.12.15) | $ 1,047,675.00 |
| Estimated interest: | $ 214,456.80 |
| Owners Expenses: | $ 930,590.04 |
| Estimated interest: | $ 183,650.54 |
| Repositioning Costs | $ 191,734.60 |
| Estimated interest: | $ 37,557.12 |
| Loss of employment (from 3.20.15 to 5.11.15) | $ 793,000.00 |
| Estimated interest: | $ 153,700.00 |
| Cost of Bank Guarantee | $ 35,318.00 |
| Estimated interest | $ 7,016.03 |
| Hull Cleaning Expense | $ 5,400.00 |
| Estimated Interest | $ 1,057.76 |
| **Total Damages from Wrongful Arrest:** | **$ 2,745,498.10** |

## COUNT I – RECOGNITION AND ENFORCEMENT OF THE ARBITRATION AWARD UNDER THE NEW YORK CONVENTION

28.     Plaintiff restates and re-alleges paragraphs 1 – 27 in the above foregoing Verified Complaint as if set forth herein.

29.     Pursuant to the terms of the Charterparty, disputes between the parties have been submitted to arbitration in London in which Mr. Bruce Harris was appointed as sole arbitrator, where English law has been applied.

30.     CPC made a preliminary issue application to the effect that no charterparty had come into existence between CPC and AGROS. Following an arbitration hearing in July 2016 in which CPC participated fully, Mr. Harris found by an arbitration award dated August 1, 2016 that CPC had ratified the Charterparty, which had been made on its behalf by Luna, whereby CPC had agreed to charter the Vessel from AGROS.

31.     Mr. Harris awarded costs to AGROS in an award published on December 19, 2016.

32.     CPC appealed, unsuccessfully, to the English High Court of Justice.

33.     This action is an ancillary proceeding brought for two purposes: (1) to enforce the award as to costs, and (2) to obtain security for AGROS's claims in aid of the ongoing London arbitration proceedings.

34.     Interest, costs, and attorneys' fees are routinely awarded to the prevailing party under English Law.  Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party.

35.     Mr. Harris issued an award in the amount of £376,151.90 in costs in favor of AGROS and determined that the charter party agreement was valid. The award as to costs is attached hereto as **Exhibit 4**.

| | |
|---|---|
| Costs Awarded by Arbitrator: | £ 376,151.90 |
| Estimated interest | £ 28,383.37 |
| **Total Costs Awarded by Arbitrator:** | £ 404,535.927 |

36.     Plaintiff hereby petitions this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 et. seq. (the "New York Convention"), for an order confirming the Award in favor of Plaintiff and against Defendant.

37.     The United States, Liberia, Sri Lanka, and the United Kingdom (*i.e.* the  country in which the Award was rendered), are signatories of the New York Convention.

38.     Jurisdiction is proper in this Court pursuant to 9 U.S.C. § 203.

39.     Venue is proper in this Court pursuant to 9 U.S.C. § 204.

40.     The August 1, 2016 arbitration award is final and no further appeal can be taken. Plaintiff respectfully submits that no grounds exist for refusal or deferral of recognition or enforcement of the Award against the Defendant under the New York Convention.

41.     Plaintiff hereby reserves the right to further petition this Court to confirm any further award of interest or costs which may be rendered in respect of this matter.

### COUNT II – RULE B ATTACHMENT FOR BREACH OF CONTRACT

42.     As best as can now be estimated, AGROS expects to recover the following amounts from CPC:

| | |
|---|---|
| Total Damages from Breach of Charter Party: | $ 3,971,421.66 |
| Total Damages from Wrongful Arrest: | $ 2,745,498.10 |
| Costs Awarded from Arbitrator | $ 527,264.04[1] |
| Estimated Attorneys' Fees: | $ 500,000.00 |

---

[1] Based on a 1.30 GBP to USD exchange rate, as of April 2, 2019.

| Estimated Arbitration Costs | $ 250,000.00 |
|---|---|
| Estimated Interest at 5.5% | $16,795.24 |
| **Total Damages, Costs, Interest, and Fees:** | **$ 8,010,979.04** |

43.     Therefore, AGROS's total claim for unpaid hire and unpaid bunker fuel, plus unpaid arbitration award, and any applicable interest, costs, and fees in the aggregate is estimated to be no less than **USD 8,010,979.04**.

## ALLEGATIONS IN SUPPORT OF SUPPLEMENTAL RULE B ATTACHMENT

44.     AGROS restates and re-alleges paragraphs 1 – 43 in the foregoing Verified Complaint as if set forth herein, and for its further and additional admiralty *in personam* claims against CPC, alleges and pleads as follows:

45.     CPC is not present and cannot be found in the District within the meaning of Supplemental Rule B.  *See* Declaration of Briton P. Sparkman, attached hereto as **Exhibit 5**. Notwithstanding the above,  CPC does have located, within the Southern District of Texas, certain tangible or intangible personal property in the hands of a party, BP and Gulf Oil LP who may be named as garnishee in the process of maritime attachment and garnishment consisting of debts, credits, or effects including but not limited to amounts owed, due or to become due, accounts, checks, payments held or which may be receivable by said garnishee on behalf of CPC.

46.     Upon information and belief, Garnishee BP and/or Garnishee Gulf Oil LP hold and/or maintain in its possession and within the Southern District of Texas tangible and/or intangible property belonging to CPC, including but not limited to: bank accounts, checks, debts (matured or unmatured) owed by or in the hands of garnishee, credits, effects, accounts payable, accounts receivables, hire payments, freight payments, loans, shares, stock, and/or choses-in-action.

## **PRAYER**

**WHEREFORE PREMISES CONSIDERED**, AGROS prays as follows:

A.      That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against CPC and said CPC be cited to appear and answer the allegations of this Verified Complaint;

B.      That if CPC cannot be found within this district, then all of its respective tangible or intangible property within this district, including physical property, or any property in which CPC has an interest, debts, credits, or effects including but not limited to: bank accounts, checks, documents of title, shares of stock or other financial instruments, and any other funds, collateral or property of any kind belonging to, claimed by, or held for the benefit of, CPC in the hands or control of persons named as garnishees in the Process of Maritime Attachment and Garnishment, be attached and seized pursuant to Supplemental Admiralty Rule B for Certain Admiralty and Maritime Claims;

C.      That a judgment be entered against CPC in the sum of **$ 8,010,979.04** and the proceeds of the assets attached be applied in satisfaction thereof;

D.      That the Court grant AGROS such other and further relief as it deems just, equitable and proper.


Dated: April 15, 2019
        Houston, Texas                          Respectfully Submitted,

                                                CHALOS & CO, P.C.


                                                 /s/ Briton P. Sparkman
                                                Briton P. Sparkman, Esq.
                                                Margaret L. Manns, Esq.
                                                7210 Tickner Street
                                                Houston, TX 77055

9

Tel: (713) 574-9582
Fax: (866) 702-4577
Email: bsparkman@chaloslaw.com
        mmanns@chaloslaw.com

*Attorneys for Plaintiff*
*Agros Shipping Co. Ltd.*

OF COUNSEL
Alan V. Praag, Esq.
*Pro Hac Vice Forthcoming*
55 Hamilton Ave.
Oyster Bay, NY 11771
Tel: (516) 714-4300
Fax: (516) 750-9051